IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

———————————————

JOHN NAWARA,

Plaintiff-Appellant/Cross-Appellee

v.

COOK COUNTY, *et al.*,

Defendants-Appellees/Cross-Appellants

———————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
Case No. 1:17-cv-02393
The Honorable Judge Rebecca R. Pallmeyer

———————————————

BRIEF FOR THE UNITED STATES AS AMICUS CURIAE SUPPORTING
PLAINTIFF-APPELLANT/CROSS-APPELLEE AND URGING REVERSAL
ON THE ISSUE ADDRESSED HEREIN

———————————————

GWENDOLYN YOUNG REAMS
 Acting General Counsel

JENNIFER S. GOLDSTEIN
 Associate General Counsel
ELIZABETH E. THERAN
 Assistant General Counsel
JAMES M. TUCKER
 Attorney
 Equal Employment
  Opportunity Commission
Office of General Counsel
131 M St. NE, 5th Floor
Washington, D.C.  20507
(202) 921-2554

KRISTEN CLARKE
 Assistant Attorney General

TOVAH R. CALDERON
JONATHAN L. BACKER
 Attorneys
 U.S. Department of Justice
 Civil Rights Division
 Appellate Section
 Ben Franklin Station
 P.O. Box 14403
 Washington, D.C.  20044-4403
 (202) 532-3528

# TABLE OF CONTENTS

TABLE OF AUTHORITIES

INTEREST OF THE UNITED STATES ................................................................1

STATEMENT OF THE ISSUE.............................................................................2

STATEMENT OF THE CASE...............................................................................3

    1.    *Statutory Background* ...........................................................3

    2.    *Facts And Procedural History* ............................................6

SUMMARY OF ARGUMENT ..............................................................................8

ARGUMENT

    BACK PAY IS AVAILABLE FOR VIOLATIONS OF THE ADA'S
    PROHIBITION AGAINST UNJUSTIFIED MEDICAL EXAMS
    AND DISABILITY-RELATED INQUIRIES COMMITTED
    AGAINST EMPLOYEES WITHOUT DISABILITIES...............................9

    A.    *The Plain Language And Structure Of Title I And Related
        Statutory Provisions Establish That All Section 12112(d)(4)
        Violations Constitute Disability Discrimination* .................................11

        1.    *Section 12112(d)(1) Classifies Prohibited Medical
            Examinations And Disability-Related Inquiries As
            Discrimination On The Basis Of Disability* .............................11

        2.    *Other Statutory Provisions Confirm That Section
            12112(d)(4) Violations Constitute Discrimination On
            The Basis Of Disability* ............................................................15

    B.    *Section 2000e-5(g)(2)(A) Precludes Back Pay Only For
        Injuries Not Caused By A Statutory Violation* ...................................19

**TABLE OF CONTENTS (continued):** **PAGE**

CONCLUSION ........................................................................................................24

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**CASES:**                                                                    **PAGE**

*Almendarez-Torres* v. *United States*, 523 U.S. 224 (1998) ......................................15

*Armstrong* v. *Turner Indus., Inc.*, 141 F.3d 554 (5th Cir. 1998) ....................... 21-22

*Bates* v. *Dura Auto. Sys., Inc.*, 767 F.3d 566 (6th Cir. 2014) ...................................12

*Bates* v. *United Parcel Serv., Inc.*, 465 F.3d 1069 (9th Cir. 2006),
    vacated on other grounds, 511 F.3d 974 (9th Cir. 2007) (en banc) ..............14

*Conroy* v. *New York State Dep't of Corr. Servs.*,
    333 F.3d 88 (2d Cir. 2003) ..............................................................................16

*Cossette* v. *Minnesota Power & Light*, 188 F.3d 964 (8th Cir. 1999)....................16

*EEOC* v. *Dillard's Inc.*, No. 08cv1780-IEG(PCL),
    2012 WL 440887 (S.D. Cal. Feb. 9, 2012)....................................................17

*Fredenburg* v. *Contra Costa Cnty. Dep't of Health Servs.*,
    172 F.3d 1176 (9th Cir. 1999) ........................................................................16

*Garrison* v. *Baker Hughes Oilfield Operations, Inc.*,
    287 F.3d 955 (10th Cir. 2002) ......................................................................22

*Green* v. *Joy Cone Co.*, 278 F. Supp. 2d 526 (W.D. Pa. 2003),
    aff'd, 107 F. App'x 278 (3d Cir. 2004) .................................................. 22-23

*Griffin* v. *Steeltek, Inc.*, 160 F.3d 591 (10th Cir. 1998) (*Griffin I*),
    cert. denied, 526 U.S. 1065 (1999)..................................................... 16-17, 22

*Griffin* v. *Steeltek, Inc.*, 261 F.3d 1026 (10th Cir. 2001) (*Griffin II*) .....................22

*International Bhd. of Teamsters* v. *United States*, 431 U.S. 324 (1977).................20

*Kroll* v. *White Lake Ambulance Auth.*, 691 F.3d 809 (6th Cir. 2012) .....................16

*Kurtzhals* v. *County of Dunn*, 969 F.3d 725 (7th Cir. 2020) ................ 10, 12, 16, 23

**CASES (continued):**                                                    **PAGE**

*Lee* v. *City of Columbus*, 636 F.3d 245 (6th Cir. 2011) ...........................................19

*Owusu-Ansah* v. *Coca-Cola Co.*, 715 F.3d 1306 (11th Cir.),
      cert. denied, 571 U.S. 1045 (2013)..................................................................16

*Pals* v. *Schepel Buick & GMC Truck, Inc.*, 220 F.3d 495 (7th Cir. 2000)...............8

*PGA Tour, Inc.* v. *Martin*, 532 U.S. 661 (2001)..........................................................3

*Pickett* v. *Sheridan Health Care Ctr.*, 610 F.3d 434 (7th Cir. 2010) .....................21

*Price Waterhouse* v. *Hopkins*, 490 U.S. 228 (1989) ...............................................20

*Roe* v. *Cheyenne Mountain Conf. Resort, Inc.*,
      124 F.3d 1221 (10th Cir. 1997) ............................................................... 16-17

*Taylor* v. *City of Shreveport*, 798 F.3d 276 (5th Cir. 2015) ...................................19

*Thomas* v. *Corwin*, 483 F.3d 516 (8th Cir. 2007)....................................................16

*Wal-Mart Stores, Inc.* v. *Dukes*, 564 U.S. 338 (2011)............................................20

*Yates* v. *United States*, 574 U.S. 528 (2015)...........................................................15

**STATUTES:**

Americans with Disabilities Act of 1990
      42 U.S.C. 12101(b)(1) ...........................................................................3
      42 U.S.C. 12102(1)................................................................................2
      42 U.S.C. 12112...................................................................................14
      42 U.S.C. 12112(a)...................................................................... 4, 11, 13
      42 U.S.C. 12112(b).......................................................................... 4, 14
      42 U.S.C. 12112(b)(5)(A)..................................................................14
      42 U.S.C. 12112(d)(1) ............................................................... *passim*
      42 U.S.C. 12112(d)(2)..................................................................... 4, 11
      42 U.S.C. 12112(d)(3)..................................................................... 4, 11
      42 U.S.C. 12112(d)(4)................................................................ 1, 4, 11
      42 U.S.C. 12112(d)(4)(A)........................................................ 5, 10, 23

**STATUTES (continued):** PAGE

42 U.S.C. 12116..........................................................................2
42 U.S.C. 12117(a) ............................................................*passim*
42 U.S.C. 12205a.......................................................................2

Civil Rights Act of 1964 (Title VII)
42 U.S.C. 2000e-2 ..................................................................20
42 U.S.C. 2000e-2(m).............................................................21
42 U.S.C. 2000e-3 ..................................................................20
42 U.S.C. 2000e-5(f)(1)...................................................... 5, 15
42 U.S.C. 2000e-5(g)...............................................................15
42 U.S.C. 2000e-5(g)(1).........................................................5, 8
42 U.S.C. 2000e-5(g)(2)(A) .......................................... 5, 8, 10, 20
42 U.S.C. 2000e-5(g)(2)(B).....................................................21

Civil Rights Act of 1991
42 U.S.C. 1981a(a)(2)......................................................5, 9, 17
42 U.S.C. 1981a(a)(3).............................................................18
42 U.S.C. 1981a(b)(1) .....................................................5, 9, 18

Rehabilitation Act of 1973
29 U.S.C. 791(f)............................................................ 9, 18-19
29 U.S.C. 794..........................................................................18
29 U.S.C. 794(a).....................................................................18
29 U.S.C. 794(d)............................................................ 9, 18-19

**LEGISLATIVE HISTORY:**

H.R. Rep. No. 485, Pt. III, 101st Cong., 2d Sess. (1990) ................................... 4, 12

IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

———————————

Nos. 22-1393, 22-1430, 22-2395 & 22-2451

JOHN NAWARA,

> Plaintiff-Appellant/Cross-Appellee

v.

COOK COUNTY, *et al.*,

> Defendants-Appellees/Cross-Appellants

———————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
Case No. 1:17-cv-02393
The Honorable Judge Rebecca R. Pallmeyer

———————————

BRIEF FOR THE UNITED STATES AS AMICUS CURIAE SUPPORTING
PLAINTIFF-APPELLANT/CROSS-APPELLEE AND URGING REVERSAL
ON THE ISSUE ADDRESSED HEREIN

———————————

## INTEREST OF THE UNITED STATES

This case presents an important question regarding the availability of back
pay for violations of Title I of the American with Disabilities Act of 1990 (ADA)'s
prohibition against subjecting incumbent employees to unjustified medical exams
or disability-related inquiries, 42 U.S.C. 12112(d)(4), committed against

employees without disabilities.[1]  The Department of Justice and the Equal

Employment Opportunity Commission (EEOC) share enforcement responsibility

under Title I, see 42 U.S.C. 12117(a), and the EEOC has Title I rulemaking

authority, see 42 U.S.C. 12116, 12205a.  Consistent with the position taken in this

brief, the EEOC has previously argued that back pay is available for violations of

Section 12112(d)(4), regardless of disability status.  See, *e.g.*, EEOC Amicus Br.

at 22-29, *Bates* v. *Dura Auto. Sys., Inc.*, 767 F.3d 566 (6th Cir. 2014) (No. 11-

6088).  Accordingly, the United States has a substantial interest in the proper

resolution of the question raised in this appeal.

The United States files this brief under Rule 29(a)(2) of the Federal Rules of

Appellate Procedure.

## STATEMENT OF THE ISSUE

A jury found that that defendants-appellees/cross-appellants Cook County

and the County's Sheriff, Thomas J. Dart (the "County"), violated Section

12112(d)(4) of the ADA by requiring plaintiff-appellant/cross-appellee John

Nawara to undergo a fitness-for-duty examination and to authorize release of his

medical records as part of the exam process.  After the trial, Nawara moved for an

---

[1]  The ADA defines the term "disability" as (1) "a physical or mental impairment that substantially limits one or more major life activities," (2) "a record of such an impairment," or (3) "being regarded as having such an impairment." 42 U.S.C. 12102(1)(A)-(C).  In this brief, the terms "disability" and "disabled" therefore refer to all three prongs of that definition.

award of back pay for the time that he was out of work because of his refusal to submit to the unlawful fitness-for-duty exam or to authorize release of his medical records. According to the district court, back pay is a remedy available for a violation of Section 12112(d)(4) only when it is committed against an employee with a disability. Because Nawara had not alleged that he was an individual with a disability, the court held that he was not entitled to back pay for the County's violation of Section 12112(d)(4).

The United States will address the following question only:

Whether an employee without a disability may recover back pay based on a violation of Section 12112(d)(4).

## STATEMENT OF THE CASE

*1.    Statutory Background*

Congress enacted the ADA to establish a "comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. 12101(b)(1). "To effectuate its sweeping purpose, the ADA forbids discrimination against disabled individuals in major areas of public life, among them employment (Title I of the Act), public services (Title II), and public accommodations (Title III)." *PGA Tour, Inc.* v. *Martin*, 532 U.S. 661, 675 (2001) (citations omitted).

Title I's prohibitions on employment-based disability discrimination are set out at 42 U.S.C. 12112, which is entitled "[d]iscrimination." Section 12112(a) provides a "[g]eneral rule" that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. 12112(a). Section 12112(b), entitled "[c]onstruction," provides a list of specified actions that are "include[d]" within Section 12112(a)'s general prohibition against discrimination on the basis of disability. See 42 U.S.C. 12112(b)(1)-(7).

Similarly, Section 12112(d) provides a "general" rule that "medical examinations and inquiries" are "include[d]" within Section 12112(a)'s "prohibition against discrimination." 42 U.S.C. 12112(d)(1). It then provides a list of specific prohibitions against employers' use of medical examinations and disability-related inquiries in both the pre-employment and employment contexts that are encompassed within that general rule. See 42 U.S.C. 12112(d)(2)-(4). Congress included those prohibitions in Title I because employers had in the past used such medical exams and inquiries "to exclude applicants with disabilities * * * before their ability to perform the job was even evaluated." H.R. Rep. No. 485, Pt. III, 101st Cong., 2d Sess. 42-43 (1990). With regard to current

employees, Title I prohibits an employer from requiring an incumbent employee to undergo "a medical examination" or from "mak[ing] inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity."  42 U.S.C. 12112(d)(4)(A).

Title I makes available to "any person alleging discrimination on the basis of disability in violation of" that statute the "powers, remedies, and procedures" that are part of Title VII of the Civil Rights Act of 1964.  42 U.S.C. 12117(a) (incorporating by reference 42 U.S.C. 2000e-4, 2000e-5, 2000e-6, 2000e-8 and 2000e-9).  Among the incorporated procedures is Title VII's private right of action.  See 42 U.S.C. 2000e-5(f)(1).  And among the incorporated remedies is Title VII's back-pay provision.  See 42 U.S.C. 2000e-5(g)(1) (authorizing courts to "order such affirmative action as may be appropriate" to remedy "an unlawful employment practice," including "back pay").  Back pay is available if "discrimination" or retaliation was the "reason" for the injury that is the basis for the requested relief.  42 U.S.C. 2000e-5(g)(2)(A).  In addition, compensatory damages are available to redress "unlawful intentional discrimination" by public employers under Title I, and both compensatory and punitive damages are available to redress the same by private employers.  42 U.S.C. 1981a(a)(2) and (b)(1).

## 2. *Facts And Procedural History*

a. Nawara began working as a correctional officer for the Cook County Sheriff's Office in 1998 and remained employed there through trial. Doc. 360.[2] In September 2016, Nawara got into a verbal altercation with a superior officer, Superintendent Karen Jones-Hayes. Doc. 360, at 2-4. Jones-Hayes filed a report about the incident with her supervisor, which ultimately led to the matter being investigated by the Sheriff's Office's human resources department. Doc. 360, at 4.

A Human Resources (HR) official, Rebecca Reierson, and an occupational-health nurse, Winifred Shelby, interviewed Nawara, and they concluded that Nawara needed to undergo a fitness-for-duty examination, both because of his behavior toward Jones-Hayes and because of his conduct during his HR interview, which they viewed as hostile. Doc. 360, at 6-9. Shelby informed Nawara that he would be placed on authorized leave (a status that would allow him to use accrued paid time off during his absence) until he had completed a fitness-for-duty exam and received clearance to return to work. Doc. 360, at 9. In addition, Shelby stated that Nawara would not be permitted to return to work until he signed two forms authorizing release of his medical records as part of the exam process. Doc. 360, at 9-10.

---

[2] "App. A__" refers to Nawara's Appendix by page number. "Doc. __, at __" refers to the docket entry number and relevant pages of the district court filings below in *Nawara* v. *County of Cook*, No. 17cv2393 (N.D. Ill.).

Nawara initially refused to submit to a fitness-for-duty exam or to sign the forms. Doc. 360, at 10-11. As a result, Nawara remained on leave until he no longer could afford to be out of work. Doc. 360, at 12. At that point, Nawara agreed to sign a modified version of one of the medical-release forms and to undergo the fitness-for-duty exam. Doc. 360, at 12. A doctor who administered the exam found Nawara fit for duty without restrictions, and Nawara returned to work at the Sheriff's Office more than ten months after his leave began. Doc. 360, at 12-13.

b. Nawara filed suit alleging, among other claims, a violation of Section 12112(d)(4), Title I's prohibition against subjecting incumbent employees to unjustified medical exams or disability-related inquiries. Doc. 1, at 12-14. Among other relief, he requested emotional-distress damages and back pay. Doc. 1, at 13. A jury found for Nawara on the Section 12112(d)(4) claim but awarded him no emotional-distress damages. Doc. 360, at 14.

c. After trial, Nawara moved for an award of back pay for the time that he was on leave and other equitable relief (Doc. 305), while defendants moved for judgment as a matter of law (Doc. 312). The district court denied defendants' motion (Doc. 360, at 24) and separately held that Nawara was not entitled to back

pay (App. A10).[3]  According to the court, Title I reserves back-pay awards for

violations of 42 U.S.C. 12112(d)(4) that constitute "'discrimination on account of'

disability."  App. A3 (quoting 42 U.S.C. 2000e-5(g)(2)(A)).  Because Nawara had

"neither claimed nor proven any perceived or actual disability," the court found

that Nawara did not meet that criterion and therefore was not entitled to back pay.

App. A10.

d.  After entry of judgment, Nawara timely appealed the district court's

back-pay decision (Doc. 389), and defendants cross-appealed (Doc. 396).

## SUMMARY OF ARGUMENT

The district court erred in concluding that back pay is a remedy available for

a violation of Section 12112(d)(4) of the ADA only when it is committed against

an employee with a disability.  The plain language and structure of Title I and

related statutory provisions demonstrate that any violation of Section 12112(d)(4)

constitutes disability discrimination.  A preceding provision in that section, Section

12112(d)(1), defines Title I's general prohibition against disability discrimination

as "includ[ing] medical examinations and inquiries."  The text therefore makes

clear that any requirement that an employee undergo a prohibited medical exam or

---

[3]  Back pay is a form of equitable relief within the province of the district
court, rather than the jury.  42 U.S.C. 2000e-5(g)(1); *Pals* v. *Schepel Buick &
GMC Truck, Inc.*, 220 F.3d 495, 500 (7th Cir. 2000) ("Back pay and front pay are
equitable remedies  * * *  and therefore matters for the judge.").

disability-related inquiry constitutes discrimination on the basis of disability. 42 U.S.C. 12112(d)(1). Other provisions of Title I and related statutes reinforce that conclusion by demonstrating Congress's understanding that all Section 12112 violations constitute disability discrimination. See 29 U.S.C. 791(f), 794(d); 42 U.S.C. 1981a(a)(2) and (b)(1), 12117(a).

The district court's contrary conclusion stems from a misreading of Title VII's back-pay provision, which is incorporated by reference into Title I. See 42 U.S.C. 12117(a) (incorporating by reference 42 U.S.C. 2000e-5(g)(2)(A)). According to the court, Section 2000e-5(g)(2)(A) precludes back-pay awards for violations of Title I that, in its view, do not constitute disability discrimination. But that is not the function of 2000e-5(g)(2)(A). Instead, that provision limits back pay to injuries caused by violation of the statute. There is no dispute that the County's Section 12112(d)(4) violation caused Nawara to miss work. Nawara is therefore entitled to back pay.

## ARGUMENT

## BACK PAY IS AVAILABLE FOR VIOLATIONS OF THE ADA'S PROHIBITION AGAINST UNJUSTIFIED MEDICAL EXAMS AND DISABILITY-RELATED INQUIRIES COMMITTED AGAINST EMPLOYEES WITHOUT DISABILITIES

Title I of the ADA prohibits an employer from requiring a current employee to undergo "a medical examination" or from "mak[ing] inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or

severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity." 42 U.S.C. 12112(d)(4)(A).

Section 12112(d)(4) protects all employees without regard to their disability status. *Kurtzhals* v. *County of Dunn*, 969 F.3d 725, 730 (7th Cir. 2020). Like all other Section 12112 violations, subsection (d)(4) violations can be redressed by Title VII's remedies, which are incorporated by reference into Title I. See 42 U.S.C. 12117(a). Among those remedies is back pay, which is available if "discrimination" or retaliation was the "reason" for the injury that is the basis for the requested relief. See 42 U.S.C. 2000e-5(g)(2)(A).

The district court interpreted Title VII's back-pay provision, as applied in the ADA context, as prohibiting back pay for a violation of Section 12112(d)(4) committed against an employee without a disability because, in the court's view, such a violation does not constitute disability discrimination. App. A3. But Title I's plain language and structure make clear that back pay is available for a violation of Section 12112(d)(4), without regard to an employee's disability status. The court's atextual reading stems from its misinterpretation of Title VII's back-

pay provision, which, contrary to the court's rendering, does not exclude specific types of unlawful employment practices from eligibility for back pay.

A.   *The Plain Language And Structure Of Title I And Related Statutory Provisions Establish That All Section 12112(d)(4) Violations Constitute Disability Discrimination*

Title I expressly classifies prohibited medical exams and disability-related inquiries as types of disability discrimination, without regard to whether they are administered to an employee with a disability.  See 42 U.S.C. 12112(d)(1).  Other provisions of Title I and related statutes confirm Congress's understanding that an employer discriminates on the basis of disability by committing *any* Section 12112 violation, including any subsection (d)(4) violation.

1.   *Section 12112(d)(1) Classifies Prohibited Medical Examinations And Disability-Related Inquiries As Discrimination On The Basis Of Disability*

Title I provides a "[g]eneral rule" prohibiting employers from "discriminat[ing] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. 12112(a).  Separately, subsection (d) contains specific prohibitions against the use of medical examinations and disability-related inquiries in both the pre-employment and employment contexts that protect all employees without regard to their disability status.  See 42 U.S.C. 12112(d)(2)-(4);

*Kurtzhals*, 969 F.3d at 730. Those prohibitions are a central component of Title I's antidiscrimination framework because, before the ADA's enactment, employers used such medical exams and inquiries to "to exclude applicants with disabilities * * * before their ability to perform the job was even evaluated." H.R. Rep. No. 485, Pt. III, 101st Cong., 2d Sess. 42-43 (1990). Section 12112(d)(1) states that "medical examinations and inquiries" are "include[d]" within subsection (a)'s "prohibition against discrimination." 42 U.S.C. 12112(d)(1). Thus, Section 12112(d)(1) defines *all* violations of Title I's specific prohibitions against the use of medical examinations or disability-related inquiries as disability discrimination.

In accordance with Section 12112(d)(1)'s plain text, the only circuit-level opinion that has addressed whether plaintiffs without disabilities suing under Section 12112(d)(4) are eligible for the remedies incorporated into the ADA—a case not cited by the district court—relied on Section 12112(d)(1) to conclude that employees without disabilities suing under Section 12112(d)(4) "qualify * * * as 'person[s] alleging discrimination on the basis of disability.'" *Bates* v. *Dura Auto. Sys., Inc.*, 767 F.3d 566, 582 (6th Cir. 2014) (alteration in original) (quoting 42 U.S.C. 12117(a)).

Instead of recognizing that Section 12112(d)(1) classifies all prohibited medical exams and disability-related inquiries as disability discrimination, the district court interpreted that provision "to mean that while medical examinations

are included in the list of subsection (a) employment practices, they constitute unlawful discrimination only when done in such a way as to 'discriminate against a qualified individual on the basis of disability.'"  App. A4-A5 (quoting 42 U.S.C. 12112(a)).  In other words, the court understood Section 12112(d)(1)'s function as prohibiting an employer from targeting employees based on their disability status to undergo medical exams or disability-related inquiries.

But Section 12112(a) prohibits such conduct on its own.  Employer-mandated medical exams and disability-related inquiries plainly are terms or conditions of employment that fall within subsection (a)'s general prohibition against discrimination on the basis of disability.  See 42 U.S.C. 12112(a). Section 12112(d)(1) would therefore be superfluous if it did not expand subsection (a)'s general prohibition by clarifying that even a requirement that all employees undergo a medical exam or submit to a disability-related inquiry is a form of disability discrimination.  If Congress had intended subsection (d)(1) only to clarify that employers may not require employees based on their disability status to undergo medical exams or disability-related inquiries, the more natural way of doing so would have been to say that subsection (a)'s general prohibition *applies* to such exams and inquiries rather than saying, as subsection (d)(1) does, that they are "include[d]" within that prohibition.  42 U.S.C. 12112(d)(1).

Moreover, the district court's reading of Section 12112(d)(1) does not align with Title I's overall structure.  Subsection (b)'s preamble, like Section 12112(d)(1), expands subsection (a) by "includ[ing]" within that general prohibition each type of conduct prohibited in subsection (b), many of which are not encompassed by subsection (a)'s plain terms.  42 U.S.C. 12112(b).  For example, Section 12112(b)(5)(A) contains an affirmative obligation that employers reasonably accommodate "the known physical or mental limitations of an otherwise qualified individual with a disability" unless doing so would impose an undue hardship.  42 U.S.C. 12112(b)(5)(A).  And Section 12112(b)(4), the associational-discrimination provision, concerns discrimination against individuals without disabilities.  See *Bates* v. *United Parcel Serv., Inc.*, 465 F.3d 1069, 1082 (9th Cir. 2006) (stating that Section 12112(b)(4) must "protect[] qualified individuals who do not themselves have disabilities" because any other reading of the provision would be "utterly incoherent"), vacated on other grounds, 511 F.3d 974 (9th Cir. 2007) (en banc).  Subsection (b)'s preamble and Section 12112(d)(1) therefore work in tandem to clarify that *all* conduct prohibited by Section 12112 constitutes disability discrimination.

That interpretation also coheres with Section 12112's heading, which summarizes the topic addressed by the section as "[d]iscrimination"—full stop. 42 U.S.C. 12112.  Although statutory "headings are not commanding, they supply

cues" as to Congress's intent. *Yates* v. *United States*, 574 U.S. 528, 540 (2015) (plurality opinion); see also *Almendarez-Torres* v. *United States*, 523 U.S. 224, 234 (1998) ("[T]he title of a statute and the heading of a section are tools available for the resolution of a doubt about the meaning of a statute." (internal quotation marks and citation omitted)). If Congress had meant to classify subsection (d)'s prohibitions against unjustified medical exams and disability-related inquiries as something other than disability discrimination, it would have manifested that intent more clearly.

> 2. *Other Statutory Provisions Confirm That Section 12112(d)(4) Violations Constitute Discrimination On The Basis Of Disability*

Further evidence that Section 12112(d)(4) violations constitute disability discrimination can be found in related statutory provisions. For example, Section 12117(a) incorporates Title VII's "powers, remedies, and procedures" into Title I but makes them available only to the EEOC, the Attorney General, or "any person alleging *discrimination on the basis of disability* in violation of any provision of this chapter." 42 U.S.C. 12117(a) (emphasis added). In addition to Title VII's equitable remedies (including back pay), Section 12117(a) also incorporates that statute's private right of action. See 42 U.S.C. 2000e-5(f)(1) and (g). A private plaintiff can therefore enforce only those Title I provisions that prohibit "discrimination on the basis of disability." 42 U.S.C. 12117(a).

Thus, taking the district court's interpretation of Section 12112(d)(4) to its logical conclusion, an individual without a disability not only would be unable to obtain back pay for a violation of that provision, but also would lack a cause of action to enforce it in the first place. That reading of the statute, however, cannot be reconciled with the consensus view among courts of appeals—including this Court—that Section 12112(d)(4) protects all employees irrespective of disability status. *Kurtzhals*, 969 F.3d at 730.[4]

Moreover, an interpretation of Section 12117(a) that limits all of Title I's protections to employees with disabilities would "defeat the very purpose" of subsections (d)(2)-(4). *Roe* v. *Cheyenne Mountain Conf. Resort, Inc.*, 124 F.3d 1221, 1229 (10th Cir. 1997); accord *Cossette* v. *Minnesota Power & Light*, 188 F.3d 964, 969 (8th Cir. 1999); *Fredenburg* v. *Contra Costa Cnty. Dep't of Health Servs.*, 172 F.3d 1176, 1182 (9th Cir. 1999). Congress intended Section 12112(d)(4) and its sibling provisions to "enhance and enforce [Title I's] blanket prohibition" against disability discrimination by "curtail[ing] all questioning that would serve to identify and exclude persons with disabilities." *Griffin* v. *Steeltek,*

---

[4] See also *Owusu-Ansah* v. *Coca-Cola Co.*, 715 F.3d 1306, 1310 (11th Cir.), cert. denied, 571 U.S. 1045 (2013); *Kroll* v. *White Lake Ambulance Auth.*, 691 F.3d 809, 816 (6th Cir. 2012); *Thomas* v. *Corwin*, 483 F.3d 516, 527 (8th Cir. 2007); *Conroy* v. *New York State Dep't of Corr. Servs.*, 333 F.3d 88, 94 (2d Cir. 2003); *Fredenburg* v. *Contra Costa Cnty. Dep't of Health Servs.*, 172 F.3d 1176, 1182 (9th Cir. 1999); *Roe* v. *Cheyenne Mountain Conf. Resort, Inc.*, 124 F.3d 1221, 1229 (10th Cir. 1997).

*Inc.*, 160 F.3d 591, 594 (10th Cir. 1998) (*Griffin I*), cert. denied, 526 U.S. 1065 (1999). Subsections (d)(2)-(4) can meaningfully safeguard against unwarranted disclosure of disabilities only if—contrary to the district court's reasoning—Title I provides a private right of action to all employees—regardless of disability status—to enforce those provisions. See *Roe*, 124 F.3d at 1229 ("It makes little sense to require an employee to demonstrate that he has a disability to prevent his employer from inquiring as to whether or not he has a disability." (citation omitted)).

Similar to Section 12117(a)'s language, the Civil Rights Act of 1991 made compensatory and punitive damages available for Title I violations, but only if the defendant "engaged in unlawful intentional *discrimination* (not an employment practice that is unlawful because of its disparate impact)." 42 U.S.C. 1981a(a)(2) (emphasis added). The district court's interpretation of Section 12112(d)(4) would therefore preclude an individual without a disability not only from obtaining back pay for a violation of that provision, but also compensatory or punitive damages. But see *EEOC* v. *Dillard's Inc.*, No. 08cv1780-IEG(PCL), 2012 WL 440887, at *6 (S.D. Cal. Feb. 9, 2012) (holding that compensatory and punitive damages are available for violations of Section 12112(d)(4) because "[a] prohibited examination or inquiry under subsection (d)(4) constitutes discrimination under § 12112(a)"). Congress could not have intended to leave only injunctive relief and declaratory

judgments to redress such violations. Without the prospect of monetary liability, employers would have little incentive to refrain from subjecting employees to invasive medical exams and disability-related inquiries, undermining the purpose of subsection (d).[5]

Courts also have recognized in construing Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. 794, that violations of Title I's prohibitions against unjustified medical exams and disability-related inquiries constitute disability discrimination. Section 504 prohibits federal agencies and recipients of federal financial assistance from engaging in disability discrimination. 29 U.S.C. 794(a) ("No otherwise qualified individual * * * shall, solely by reason of her or his disability, * * * be subjected to discrimination."). The Rehabilitation Act states that the "standards" used to determine whether the Act has been violated in a case alleging *employment discrimination*" are "the standards applied under title I of the Americans with Disabilities Act." 29 U.S.C. 791(f), 794(d) (emphasis added). Courts have held that those provisions incorporate Title I's prohibitions against

---

[5] Section 1981a(a)(2)'s language regarding disparate-impact claims also demonstrates that when Congress intends to deny remedies for specific categories of claims, it generally does so expressly, not in the implicit and indirect way that the district court held that Section 2000e-5(g)(2)(A) operates. Similarly, Section 1981a expressly denies punitive damages for Title I claims against public-sector employers and both compensatory and punitive damages where employers make "good faith efforts" to identify a reasonable accommodation for a person with a disability. 42 U.S.C. 1981a(a)(3) and (b)(1).

unjustified medical exams and disability-related inquiries into Section 504's

prohibition against disability discrimination.  See *Lee* v. *City of Columbus*, 636

F.3d 245, 252 (6th Cir. 2011) (collecting cases); see also, *e.g.*, *Taylor* v. *City of

Shreveport*, 798 F.3d 276, 283 (5th Cir. 2015).  Those decisions therefore

implicitly and correctly recognize that violations of Section 12112(d)'s

prohibitions constitute "employment discrimination."  29 U.S.C. 791(f), 794(d).

Because Title I classifies Section 12112(d)(4) violations as a form of

disability discrimination, Nawara was the victim of such discrimination and is

therefore eligible for back pay.

B.      *Section 2000e-5(g)(2)(A) Precludes Back Pay Only For Injuries Not Caused By A Statutory Violation*

Even if Title I did not expressly classify all prohibited medical exams and

disability-related inquiries as disability discrimination, the district court erred in its

interpretation of Section 2000e-5(g)(2)(A), Title VII's back-pay provision that is

incorporated by reference into Title I.  That provision does not limit back pay to

certain types of Title I claims.  Instead, it makes clear that back pay is unavailable

for injuries caused by conduct that does not violate the statute at all.

In the Title VII context, Section 2000e-5(g)(2)(A) bars courts from awarding

back pay to any plaintiff who "was refused employment or advancement or was

suspended or discharged for any reason other than discrimination on account of

race, color, religion, sex, or national origin or in violation of [Title VII's anti-

retaliation provision].” 42 U.S.C. 2000e-5(g)(2)(A). No category of Title VII

violation that could conceivably be remedied with back pay falls outside the ambit

of that language. See 42 U.S.C. 2000e-2, 2000e-3. Thus, in the Title VII context,

Section 2000e-5(g)(2)(A) limits back pay to injuries caused by violations of the

statute, not to certain categories of claims under the statute.

In other words, Section 2000e-5(g)(2)(A) precludes back-pay awards where

there is no causal connection between a statutory violation and the injury, an issue

that often arises during the remedial phase of a class action or pattern-or-practice

case. See *Wal-Mart Stores, Inc.* v. *Dukes*, 564 U.S. 338, 366-367 (2011)

(describing the function of Section 2000e-5(g)(2)(A) as allowing a defendant to

prevent imposition of back pay by “demonstrat[ing] that the individual applicant

was denied an employment opportunity for *lawful* reasons.” (emphasis added)

(quoting *International Bhd. of Teamsters* v. *United States*, 431 U.S. 324, 362

(1977))). The “proper focus” of Section 2000e-5(g)(2)(A) is therefore primarily

“claims of systemic discrimination,” where—after a defendant’s liability has been

established—a court must identify the members of a class for whom “the existence

of systemic discrimination had no effect.” *Price Waterhouse* v. *Hopkins*, 490 U.S.

228, 244 n.10 (1989).

The causation-focused function of Section 2000e-5(g)(2)(A) is confirmed by

the provision’s neighboring subsection, which provides an affirmative defense to

employers to prevent the award of back pay where discrimination was a "motivating factor" for the employment decision that caused the plaintiff's injury, 42 U.S.C. 2000e-2(m), but the employer "would have taken the same action in the absence of the impermissible motivating factor," 42 U.S.C. 2000e-5(g)(2)(B); see also *Pickett* v. *Sheridan Health Care Ctr.*, 610 F.3d 434, 443 (7th Cir. 2010) (describing Section 2000e-5(g)(2)(B) as providing "an affirmative, but for, defense").

There is no textual basis for the district court's conclusion that Section 2000e-5(g)(2)(A) serves a completely different function in the Title I context of precluding back pay for certain types of violations of that statute. Any mismatch between the word "discrimination" in Section 2000e-5(g)(2)(A) and the conduct prohibited in Section 12112(d)—and there is none—is simply a quirk of Title I's incorporation by reference of Title VII's remedies, no different than the absence of "disability" among the protected characteristics enumerated in Section 2000e-5(g)(2)(A).

Moreover, the cases relied on by the district court (App. A7-A8) did not hold that Section 2000e-5(g)(2)(A) precludes back pay for plaintiffs without disabilities. For example, in *Armstrong* v. *Turner Industries, Inc.*, 141 F.3d 554 (5th Cir. 1998), the Fifth Circuit held that a plaintiff was not entitled to any remedy for a violation of Section 12112(d)(2) "because he ha[d] not been injured and ha[d] no need of

being made 'whole,'" but the court stressed that it was not "foreclos[ing] the possibility of liability based on any injuries legally and proximately caused by such a violation." *Id.* at 562 n.20. The Tenth Circuit in *Griffin* v. *Steeltek, Inc.*, 261 F.3d 1026 (10th Cir. 2001) (*Griffin II*), similarly denied a plaintiff nominal damages (a form of compensatory damages) or punitive damages for a violation of Section 12112(d)(2) because a jury had determined that the plaintiff had "suffered no injury from being asked * * * prohibited questions." *Id.* at 1028-1029.[6] And in *Green* v. *Joy Cone Co.*, 278 F. Supp. 2d 526 (W.D. Pa. 2003), aff'd, 107 F. App'x 278 (3d Cir. 2004), a district court held that a plaintiff lacked Article III standing to bring a Section 12112(d)(2) claim because she "offer[ed] no evidence to support her speculative claim that she was denied employment" based on a medical-disclosure form included among job-application materials. *Id.* at 544.[7]

---

[6] *Griffin II* does not address what sorts of injuries can justify damages in a Section 12112(d) case, but the Tenth Circuit subsequently refused to construe that case as precluding the award of compensatory damages in Section 12112(d)(3) cases where a plaintiff does not "allege[] discrimination on the basis of disability" in the ordinary sense of those words. *Garrison* v. *Baker Hughes Oilfield Operations, Inc.*, 287 F.3d 955, 963 (10th Cir. 2002). Instead, the court properly held that "a claimant may recover compensatory damages for [any] tangible injury 'legally and proximately caused' by violation of § 12112(d)(3)." *Ibid.* (quoting *Griffin I*, 160 F.3d at 595).

[7] *Green* does contain dicta, on which the district court relied heavily (App. A7), stating that Section 2000e-5(g)(2)(A) precludes an award of back pay where a plaintiff does not "claim[] to have been discriminated against on account of a disability." 278 F. Supp. 2d at 544. But the fundamental defect in the

In this case, there is no doubt that Nawara suffered a tangible injury because of the County's Section 12112(d)(4) violation. He spent more than ten months on authorized leave and earned no income for a substantial portion of that time because he refused to submit to a prohibited fitness-for-duty exam or to sign medical-disclosure forms. Doc. 360, at 9-13. Nawara is entitled to back pay to redress that injury.[8]

---

plaintiff's claim—and the linchpin to *Green*'s holding—was that she had failed to allege any injury whatsoever caused by the alleged Section 12112(d) violation. *Ibid.* *Green*'s truncated and incorrect discussion of Section 2000e-5(g)(2)(A) is not persuasive.

[8] Of note, the availability of back pay for Section 12112(d)(4) violations committed against employees without disabilities does not mean that employers face the prospect of monetary liability whenever they require employees to undergo medical exams or disability-related inquiries. Section 12112(d)(4) permits medical exams and disability-related inquiries that are "shown to be job-related and consistent with business necessity." 42 U.S.C. 12112(d)(4)(A). Courts, including this one, have recognized that Section 12112(d)(4)'s business-necessity defense applies with particular force in the law-enforcement context. *E.g.*, *Kurtzhals*, 969 F.3d at 731 (recognizing that police departments have "a particularly compelling interest in assuring that" police officers are "physically and mentally fit to perform [their] duties" (citation omitted)).

# CONCLUSION

For all of the foregoing reasons, this Court should reverse the district court's

back-pay order and remand the case for further proceedings.

Respectfully submitted,

| | |
|---|---|
| GWENDOLYN YOUNG REAMS | KRISTEN CLARKE |
|   Acting General Counsel |   Assistant Attorney General |
| | |
| | /s Jonathan L. Backer |
| JENNIFER S. GOLDSTEIN | TOVAH R. CALDERON |
|   Associate General Counsel | JONATHAN L. BACKER |
| ELIZABETH E. THERAN |   Attorneys |
|   Assistant General Counsel |   U.S. Department of Justice |
| JAMES M. TUCKER |   Civil Rights Division |
|   Attorney |   Appellate Section |
|   Equal Employment |   Ben Franklin Station |
|     Opportunity Commission |   P.O. Box 14403 |
|   Office of General Counsel |   Washington, D.C. 20044-4403 |
|   131 M St. NE, 5th Floor |   (202) 532-3528 |
|   Washington, D.C. 20507 | |
|   (202) 921-2554 | |

# CERTIFICATE OF COMPLIANCE

I certify that the attached BRIEF FOR THE UNITED STATES AS AMICUS CURIAE SUPPORTING PLAINTIFF-APPELLANT/CROSS-APPELLEE AND URGING REVERSAL ON THE ISSUE ADDRESSED HEREIN:

(1)  complies with the type-volume limitation of Federal Rules of Appellate Procedure 29(a)(5) and 32(a)(7)(B), as modified by Circuit Rule 29, because it contains 5044 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f); and

(2)  complies with the typeface requirements of Circuit Rule 32(b) and Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Word 2019, in 14-point Times New Roman font.

s/ Jonathan L. Backer
JONATHAN L. BACKER
 Attorney

Date:  November 23, 2022

**CERTIFICATE OF SERVICE**

I hereby certify that on November 23, 2022, I electronically filed the foregoing BRIEF FOR THE UNITED STATES AS AMICUS CURIAE SUPPORTING PLAINTIFF-APPELLANT/CROSS-APPELLEE AND URGING REVERSAL ON THE ISSUE ADDRESSED HEREIN with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the appellate CM/ECF system. All participants in this case are registered CM/ECF users and will be served by the appellate CM/ECF system.

I further certify that fifteen paper copies identical to the electronically filed brief will be mailed to the Clerk of the Court.

s/ Jonathan L. Backer
JONATHAN L. BACKER
 Attorney