Nos. 22-1393, 22-1430, 22-2395 & 22-2451

————————————————

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

————————————————

JOHN NAWARA,
*Plaintiff-Appellant,*

*v.*

COUNTY OF COOK and THOMAS J. DART, in his official capacity as
head of the Cook County Sheriff's Office,
*Defendants-Appellees.*

————————————————

On Appeal from the United States District Court
for the Northern District of Illinois
No. 17-cv-2393
Hon. Rebecca R. Pallmeyer

————————————————

## PETITION FOR REHEARING WITH SUGGESTION
## FOR REHEARING EN BANC

Sarah R. Marmor
George D. Sax
SCHARF BANKS MARMOR LLC
30 West Hubbard, Suite 500
Chicago IL 60654
(312) 726-6000
smarmor@scharfbanks.com
gsax@scharfbanks.com

*Special Assistant Cook County State's
Attorneys, on behalf of Defendants-Appellees
and Cross-Appellants*

Eileen O'Neill Burke
COOK COUNTY STATE'S
ATTORNEY'S OFFICE
69 West Washington St., Suite 3200
Chicago, IL 60602
(312) 603-1880

*On behalf of Defendants-Appellees
and Cross-Appellants.*

i

Save As     Clear Form

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: <u>22-1393, 22-1430, 22-2395 & 22-2451</u>

Short Caption: <u>Nawara v. County of Cook, et al.</u>

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

<u>County of Cook and Thomas J. Dart</u>

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

<u>Scharf Banks Marmor LLC</u>

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        <u>None</u>

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        <u>None</u>

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

Attorney's Signature: <u>/s/ Sarah R. Marmor</u>    Date: <u>4/29/2025</u>

Attorney's Printed Name: <u>Sarah R. Marmor</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). **Yes** ☑ **No** ☐

Address: <u>30 West Hubbard Street, Suite 500, Chicago, IL 60654</u>

Phone Number: <u>312-726-6000</u>    Fax Number: <u>312-726-6045</u>

E-Mail Address: <u>smarmor@scharfbanks.com</u>

rev. 12/19 AK

Save As     Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: <u>22-1393, 22-1430,</u> 22-2395 & 22-2451

Short Caption: <u>Nawara v. County of Cook, et al.</u>

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
<u>County of Cook and Thomas J. Dart</u>

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
<u>Scharf Banks Marmor LLC</u>

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        <u>None</u>

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        <u>None</u>

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

Attorney's Signature: <u>/s/ George D. Sax</u>    Date: <u>4/29/2025</u>

Attorney's Printed Name:  <u>George D. Sax</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).  **Yes** ☑  **No** ☐

Address:  <u>30 West Hubbard Street, Suite 500, Chicago, IL 60654</u>

Phone Number: <u>312-726-6000</u>    Fax Number: <u>312-726-6045</u>

E-Mail Address: <u>gsax@scharfbanks.com</u>

    rev. 12/19 AK

# <u>TABLE OF CONTENTS</u>

**Page(s)**

CIRCUIT RULE 26.1 DISCLOSURE STATEMENTS.............................................ii,iii

TABLE OF AUTHORITIES ................................................................................ v

RULE 35(B) STATEMENT ............................................................................... 1

BACKGROUND................................................................................................ 1

ARGUMENT ..................................................................................................... 3

CONCLUSION.................................................................................................. 9

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Armstrong v. Turner Indus.*, 141 F.3d 554 (5th Cir. 1998) ....................................... 5, 6

*Griffin v. Steeltek Inc.*, 160 F.3d 591 (10th Cir. 1998) .................................................. 7

*Griffin v Steeltek, Inc.*, 261 F.3d 1026 (10th Cir. 2001)............................................. 6, 7

*Kosiba v. Cath. Health Sys. of Long Island, Inc.*, Case No. 23-6, 2024
    WL 3024652 (2d Cir. Jun. 17, 2024) ........................................................................ 8

*Kurtzhals v. Cnty. of Dunn*, 969 F.3d 725 (7th Cir. 2020) ....................................... 3, 5

*Taylor v. City of Shreveport*, 798 F.3d 276 (5th Cir. 2015) ......................................... 6

*Tice v. Ctr. Area Transp. Auth.*, 247 F.3d 506 (3d Cir. 2001) ..................................... 7

**Statutes**

42 U.S.C § 12101(b)(1) ................................................................................................. 9

42 U.S.C. § 12112.................................................................................................. *passim*

42 U.S.C. § 12112(b) ............................................................................................ *passim*

42 U.S.C. § 12112(d) ............................................................................................*passim*

## RULE 35(b) STATEMENT

Pursuant to Fed. R. App. P. 35 and 40 and Circuit Rules 35 and 40, Defendants respectfully petition for panel rehearing and rehearing en banc of the April 1, 2025 decision ("decision") in this case, attached here as Exhibit A. En banc rehearing is requested because of a conflict with other Circuit Courts. The decision held that all violations of 42 U.S.C. 12112(d)(4) amount to "discrimination on the basis of disability," even if the employee is not disabled or perceived as disabled and even where no jury found, or was asked to find, that the employer engaged in discrimination. *Id*. at 11. The decision conflicts with other Circuit Courts of Appeal, including authority that the district court relied on below. *See* R. 373 at 7-9 (collecting and discussing Fifth and Tenth Circuit authority).

## BACKGROUND

The Americans with Disabilities Act ("ADA") states that employers shall not conduct a medical examination of employees or inquire about a disability unless the examination or inquiry is "job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4)(A). Plaintiff Nawara, a Cook County Sheriff's officer, sued under that statute. Nawara cursed out and argued with his supervising officer during an inmate incident at Cermak Hospital, and the supervisor made a written complaint. R. 421-7, 421-10, 421-13 & 421-19. Nawara was called into a meeting with human resources, in which he was combative and which he exited angrily. R. 322 at 400:2-402:24; R. 325 at 1016:15-1018:14; R. 327 at 1380:1-1406:20. When he returned, the interviewers (Rebecca Reierson and Nurse Shelby) informed him he was being sent for a "fitness for duty" examination and gave him two blank HIPAA release forms so

that the examination could take place. R. 421-20. Nawara objected that the forms were overbroad and refused to sign them; he was put on paid leave in November 2016 after refusing to sign the forms. R. 364-1.

Nawara filed this lawsuit on March 29, 2017, alleging violations of 42 U.S.C. 12112(d). R. 1. He was paid salary and benefits through April 26, 2017, when he was taken off the payroll, having exhausted available paid time off – although he never lost medical benefits. R. 364-1. Nawara eventually signed amended HIPAA release forms and, in September 2017, underwent a fitness exam with a psychologist who found him fit for duty. R. 329 at 1595:14 -1664:11. He returned to work on September 26, 2017, having gone about five months without pay from the Sheriff, during which time he worked private security jobs for UPS and Amazon. R. 325 at 1118:8-1122:23.

Nawara's case was tried before a jury between February 24 and March 5, 2020. R. 321, R. 322, R. 323, R. 324, R. 325, R. 326, R. 327, R. 328, R. 329, R. 330, R.331, R. 332. No trial testimony was presented that Defendants believed Nawara had a disability or acted with animus toward him based on such a belief. In its charge to the jury, the district court did not use the words "discriminate" or "discrimination" at all. R. 302 at 7154-7167. Rather, the jury was instructed only to determine if the fitness-for-duty referral and related HIPAA releases were justified by a job-related necessity. *Id.* The jury was also instructed and asked to decide whether Nawara had incurred any emotional distress damage. *Id.*

On March 5, 2020, the jury returned a verdict finding that the Sheriff had violated the ADA, but awarded Nawara zero emotional distress damages. R. 304. The verdict form did not allow the jurors to consider any other measure of damages and

2

expressly left to the district court whether to award Nawara "lost earnings." *Id*. Nawara subsequently moved the district court to require the Sheriff to give him "back pay" for the period of his unpaid leave. R. 305.

On November 4, 2021, the district court denied Nawara's motion for back pay, holding that "on the facts of this case, CCSO's violation of § 12112(d)(4) did not constitute disability discrimination." R. 373 at 1. The district court noted that the ADA's general anti-discrimination provision, § 12112(a), was "not before the jury." *Id*.at 3. The court also noted that at no point during or prior to trial did Nawara claim to have an actual or perceived disability. *Id*. at 2. The district court reasoned that Nawara was a non-disabled employee to whom the jury awarded no emotional distress damages. *Id*. at 9. The district court amended its judgment twice, and continued to hold that Nawara had proven only a technical violation of § 12112(d)(4) and had not proven discrimination based on an actual or perceived disability. R. 383, R. 413 at 4. Final judgment issued on July 29, 2022 (R. 413) and this appeal followed.

On April 1, 2025, this Court reversed the district court. See Ex. A. The decision held that any finding that an employer violated § 12112(d)(4) amounts to a finding of "discrimination on the basis of disability" under the ADA, even if the employee is not disabled or perceived as disabled and even, as here, where the jury was not asked to make a finding of discrimination under the ADA.  *Id*. at 11.

## ARGUMENT

The decision in this case, which expanded the scope of *Kurtzhals v. Cnty. of Dunn*, 969 F.3d 725, 728 (7th Cir. 2020), warrants rehearing in light of a circuit court conflict over what constitutes discrimination for purposes of 42 U.S.C. § 12112(d)(4).

3

That statue provides: "A covered entity shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4)(A). This statute is part of the ADA, which states the following general rule prohibiting discrimination: "No covered entity shall discriminate against a qualified individual on the basis of disability in regard to . . . other terms, conditions, and privileges of employment." 42 U.S.C. 12112(a).

The general rule in § 12112(a) of the ADA is subject to rules of construction in 42 U.S.C. § 12112(b), which identifies seven different types of prohibited actions that constitute discrimination. The rules of construction specify that "employment tests or other selection criteria" are discrimination only if they "screen out or tend to screen out an individual with a disability." 42 U.S.C. § 12112(b)(6). There is no other specific reference to tests given to employees in § 12112(b). Instead, § 12112(d)(1) of the ADA, which Congress placed outside § 12112(b)'s rules of construction, states generally that "[t]he prohibition against discrimination as referred to in subsection (a) shall include medical examinations and inquiries."

Importantly, § 12112(d)(1) does not state that *all* medical examinations are discrimination on the basis of disability. Indeed, extending the scope of § 12112(d)(1) to employees who are neither disabled nor perceived as disabled is inconsistent with the common meaning of "discrimination."[1] Extending § 12112(d)(1) to such employees

---

[1]*See, e.g.,* https://www.merriam-webster.com/dictionary/discrimination (defining "**discrimination**" as "prejudiced or prejudicial outlook, action, or treatment [ex.]

4

is also in tension with §12112(b)(6)'s rule of construction that employee testing must target an actual or perceived disability to be deemed discriminatory.

The decision in this appeal, as well as *Kurtzhals*, effectively reads the words "any and all" into § 12112(d)(1) while putting aside both the common meaning of "discrimination" and § 12112(b)'s rules of construction. Under the decision's view, plaintiffs who are not disabled or perceived as disabled may hold employers liable for "discrimination" anytime a medical examination is deemed unnecessary, regardless of whether an employer had discriminatory intent. As the district court correctly stated below, other Circuit Courts of Appeal have found unintentional or technical violations of § 12112(d) to be non-discriminatory and therefore not subject to money damages. *See* R. 373 at 7-9 (citing Fifth and Tenth Circuit cases). Defendants respectfully submit that this competing interpretation of the statute is better-reasoned and more workable than the decision in this case and ask for en banc rehearing.

The Fifth Circuit first broached the topic of non-discriminatory or technical violations of § 12112(d) in *Armstrong v. Turner Indus.*, 141 F.3d 554 (5th Cir. 1998), a case involving § 12112(d)(2)'s restrictions on medical examinations of prospective hires.[2] *Armstrong* granted summary judgment on a non-disabled plaintiff's claim

---

racial *discrimination*" or "the act, practice, or an instance of discriminating categorically rather than individually") (emphasis original).

[2] This case and *Griffin* were decided before 2008, when Congress amended § 12112(a) to change the words "because of" to "on the basis of" disability. Per *Kurtzhals*, 969 F.3d at 728, there is an "open question" about whether this amendment made any substantive difference in § 12112(d)(4) case law. It is Defendants' position that the amendment made no substantive difference.

5

against a prospective employer who asked him to take a urine test, finding no "indication either in the text of the ADA or in its legislative history that a violation of the prohibition against preemployment medical examinations and inquiries, in and of itself, was intended to give rise to damages liability." 141 F.3d at 561.

The Fifth Circuit returned to § 12112(d) in *Taylor v. City of Shreveport*, 798 F.3d 276 (5th Cir. 2015), where it dismissed a complaint by nondisabled police officers who challenged their department's sick leave policy for failure to state a claim. *Taylor* found that a plaintiff need not allege he or she actually "has a disability" to file a § 12112(d) claim, 798 F.3d at 284, but stopped short of reversing *Armstrong*. *Taylor* also pointedly noted that a "prohibited medical examination or inquiry may constitute a form of employment discrimination under the ADA." *Id*. at 282-283. *Taylor*'s use of the term "may constitute" affirms that, in the Fifth Circuit, some violations of § 12112(d) do not rise to the level of discrimination even if they could be redressed with injunctive relief.

In a similar vein, the Tenth Circuit has recognized the crucial distinction between discriminatory and technical violations of § 12112(d). In *Griffin v Steeltek, Inc.*, 261 F.3d 1026, 1028 (10th Cir. 2001) ("*Griffin II*"), a jury found the defendant violated § 12112(d)(2) by asking plaintiff if he had ever filed a workers' compensation claim and if he had any "physical defects which preclude you from performing certain jobs," which the plaintiff refused to answer even though he was not disabled. The jury did not find any discriminatory intent in this question. *See id. Griffin II* rejected plaintiff's claim for damages and attorney fees, reasoning that the jury found only that the defendant "technically violated § 12112(d)(2)(A) by asking a prohibited

6

question," and did not establish true discrimination through an intent to target either an actual or perceived disability. *Id*. at 1029.

Defendants respectfully submit that the decision in this case misapprehended Tenth Circuit law by citing the earlier opinion in *Griffin v. Steeltek Inc.*, 160 F.3d 591 (10th Cir. 1998) ("*Griffin I*"). Ex. A at 10 (citing *Griffin I*).  *Griffin I* held that a plaintiff who is not disabled or perceived as disabled can still file suit under § 12112(d), but was substantially limited by *Griffin II*, which allowed no money damages for a technical violation of the statute without proof of discriminatory purpose.  261 F.3d at 1026. The district court ruling's below – that Nawara had proven a technical violation of § 12112(d)(4) by his employer but had not proven the discriminatory intent necessary to recover money damages – almost exactly mirrored *Griffin II*, and reversal of that ruling creates a conflict with *Griffin II*.

The Third Circuit likewise draws a distinction between discriminatory and non-discriminatory violations of § 12112(d). *Tice v. Ctr. Area Transp. Auth.*, 247 F.3d 506, 514-16 (3d Cir. 2001) entered summary judgment against a bus driver whose employer asked him to see a doctor before returning from sick leave. *Tice* noted that "even an improper IME request, without more, might not be sufficient to demonstrate that an employee was 'regarded as' disabled." 247 F.3d at 515. The Third Circuit found "it is not clear from the text of the ADA itself" whether employees without disabilities can file suit under § 12112(d)(4). *Id*. at 516-17. *Tice* went on to hold the defendant not liable for discrimination because plaintiff proved only a non-prejudicial violation of § 12112(d)(4)'s confidentiality provision and offered no details supporting his claims that similarly situated employees were treated differently.  *Id*. at 519-20.

7

Finally, just last year, the Second Circuit found there is no liability for discrimination at all under § 12112(d)(4) without proof of an actual or perceived disability. In *Kosiba v. Cath. Health Sys. of Long Island, Inc.*, Case No. 23-6, 2024 WL 3024652 (2d Cir. Jun. 17, 2024), the court affirmed dismissal of a § 12112(d)(4) challenge to an employer's COVID-19 vaccination requirement. *Kosiba* rejected plaintiff's claim that the employer's "requirement to disclose his vaccination status was a forbidden, disability-related inquiry" because plaintiff was "neither disabled nor regarded as having a disability, and [defendant] never inquired into whether he had a disability." *Id.* at*3 n.1. *Kosiba* was decided over a year after oral argument in this appeal and reinforces the district court's reliance on Southern District of New York case law in its ruling below. See R. 373 at 8 (citing and relying on *Transp. Workers Union of Am., Loc. 100, AFL-CIO v. NYC Transit Auth.*, 342 F. Supp. 2d 160 (S.D.N.Y. 2004)).

Respectfully, the decision in this case erred in rejecting the well-reasoned approaches of the Second, Third, Fifth, and Tenth Circuits. Those Circuit Courts of Appeal have all, one way or another, declined to read language into § 12112(d)(4) allowing plaintiffs to recover money damages for discrimination unless they are disabled or perceived as disabled. To hold otherwise disregards both the common meaning of the word discrimination and the nearest reasonable referent to § 12112(d)(4) in §12112(b)(6)'s rule of construction.

The conflict with other Courts of Appeal is problematic and presents an issue of tremendous importance justifying rehearing. For example, if the decision in this case were to stand and remain in conflict with *Kosiba*, employer vaccination or other

health-and-safety-related requirements may soon come under widespread § 12112(d)(4) attack from employees who live in Indiana, Illinois and Wisconsin on the grounds that the requirements are *per se* discrimination under the ADA – even though such challenges would not survive a motion to dismiss if brought by employees in New York or other states.

The contrary rule of decision in other Circuit Courts is also consistent with Congress's stated purpose and policy in enacting the ADA in the first place: "the elimination of discrimination against individuals with disabilities." 42 U.S.C § 12101(b)(1). Congress could not possibly have had in mind plaintiffs like Nawara, who belonged to no protected class, who had no trouble getting hired for jobs in both law enforcement and private security, and who suffered no animus as result of actual or perceived disability. Nawara missed work with the Sheriff only because he felt that a HIPAA release form handed to him at the human resources meeting was too broad in scope. He held out for months until the release form was amended to his liking. Once the issue with the form was resolved, Nawara returned to work and went on to take, and easily pass, his fitness for duty exam. He remains in active service as a police officer to this day. It is difficult to see how awarding money to Nawara and deeming him a victim of "discrimination" does anything to eliminate bigotry and prejudice toward people with actual disabilities.

## CONCLUSION

This court should grant panel rehearing or rehearing en banc.

Respectfully submitted,

/s/ George D. Sax

9

Sarah R. Marmor
George D. Sax
SCHARF BANKS MARMOR LLC
30 West Hubbard, Suite 500
Chicago IL 60654
(312) 726-6000
smarmor@scharfbanks.com
gsax@scharfbanks.com

*Special Assistant Cook County State's
Attorneys, on behalf of Defendants-Appellees
and Cross-Appellants*

**CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32(a)(7)**

      In accordance with Fed. R. App. P. 32(g), I certify that this brief complies with the type-volume limitation set forth in Fed. R. App. P. 32(a)(7)(B)(i) because it is written in 12 point Century Schoolbook font and contains 2,600 words, beginning with the words "Rule 35(b) Statement" on page 1 and ending with the words "Respectfully submitted" on page 9. In preparing this certificate, I relied on the word count function of Microsoft Word.

Respectfully submitted,

/s/ George D. Sax
Sarah R. Marmor
George D. Sax
SCHARF BANKS MARMOR LLC
30 West Hubbard Street, Suite 500
Chicago IL 60654
Phone: (312) 726-6000
smarmor@scharfbanks.com
gsax@scharfbanks.com

*Attorneys for Defendants-Appellees and Cross-Appellants Cook County, Illinois and Thomas J. Dart, Sheriff of Cook County*

11

## CERTIFICATE OF SERVICE

I hereby certify that on **April 29, 2025,** I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Respectfully submitted,

/s/ George D. Sax
Sarah R. Marmor
George D. Sax
SCHARF BANKS MARMOR LLC
30 West Hubbard Street, Suite 500
Chicago IL 60654
Phone: (312) 726-6000
smarmor@scharfbanks.com
gsax@scharfbanks.com

*Attorneys for Defendants-Appellees and Cross-Appellants Cook County, Illinois and Thomas J. Dart, Sheriff of Cook County*

# EXHIBIT A

In the

# United States Court of Appeals

## For the Seventh Circuit

―――――――――――

Nos. 22-1393, 22-1430, 22-2395, & 22-2451

JOHN NAWARA,

*Plaintiff-Appellant, Cross-Appellee,*

*v.*

COOK COUNTY and THOMAS J. DART,

*Defendants-Appellees, Cross-Appellants.*

―――――――――――

Appeals from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:17-cv-02393 — **Rebecca R. Pallmeyer**, *Judge.*

―――――――――――

ARGUED MAY 17, 2023 — DECIDED APRIL 1, 2025

―――――――――――

Before RIPPLE, SCUDDER, and LEE, *Circuit Judges.*

LEE, *Circuit Judge.* John Nawara, a former correctional officer at Cook County Jail, initiated several altercations with other county employees. The Cook County Sheriff's Office determined that Nawara needed to undergo a fitness-for-duty examination before returning to work. And, as part of this process, it required Nawara to sign two medical information release forms. Nawara resisted at first but eventually relented. But before he did, he sued Cook County and Sheriff Thomas

Dart in his official capacity (collectively "the Sheriff"), alleging that the examination requirement and inquiry into his mental health violated § 12112(d)(4) of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*

Nawara prevailed at trial, but the jury awarded him zero damages. Nawara then filed a post-trial motion, requesting equitable relief in the form of back pay and lost pension benefits as well as restoration of his seniority.[1] The court granted the latter, but denied the former concluding that the Sheriff's violation of Nawara's rights under § 12112(d)(4) cannot support an award of back pay.

Nawara now appeals the district court's denial of his request for back pay. In turn, the Sheriff cross-appeals the court's order restoring Nawara's seniority. We affirm the district court's restoration of Nawara's seniority, but because the ADA defines a violation of § 12112(d)(4) to be discrimination "on the basis of disability," we reverse the district court's denial of Nawara's request for back pay and remand for further proceedings.

## I

John Nawara joined the Cook County Sheriff's Office in 1998. He was working as a correctional officer in 2016 when he had a series of heated altercations with his superior officer, Superintendent Karen Jones-Hayes. Several weeks later, he engaged in another contentious interaction with Rebecca Reierson, a human resources manager, and Winifred Shelby, an

---

[1] Because there is no reason to differentiate between back pay and lost pension benefits for the purpose of this appeal, we will refer to both simply as "back pay."

occupational health nurse. As a result, Reierson and Shelby required Nawara to undergo a fitness-for-duty examination before returning to work, and the Sheriff placed Nawara on paid leave.

To initiate the examination process, Shelby instructed Nawara to submit two signed medical information authorization forms—one allowing medical providers to send his information to the examination company, and the other permitting the Sheriff's Office to collect his information from medical providers to send to the company expediting the process. Despite repeated requests, Nawara refused to submit the executed forms, and the process stalled.

Nawara's paid leave ended on April 25, 2017, and he was placed on unpaid leave, during which he worked other jobs. Nawara eventually decided to return to the Sheriff's Office and provided the authorization forms in August 2017. After undergoing the fitness-for-duty examination, he was declared fit for duty and returned to work as a correctional officer on September 26, 2017. In September 2019, Nawara became a Cook County Sheriff's police officer.

While on leave, Nawara filed this lawsuit, alleging that the Sheriff's actions violated 42 U.S.C. § 12112(d)(4). After a trial, the jury agreed with Nawara that the examination requirement and related requests for medical records violated § 12112(d)(4)(A). That provision prohibits an employer from requiring a medical examination or inquiring about an employee's disability status unless it is job-related and consistent with business necessity. 42 U.S.C. § 12112(d)(4)(A). The jury, however, awarded no damages.

Nawara then filed a post-trial motion requesting equitable relief in the form of back pay and the restoration of his seniority. After reviewing the pertinent statutory provisions, the district court determined that a plaintiff, like Nawara, must have a disability or perceived disability for a violation of § 12112(d)(4) to constitute discrimination on account of disability. *Nawara v. County of Cook*, 570 F. Supp. 3d 594, 600–01 (N.D. Ill. 2021). And because the remedy provision applicable here, 42 U.S.C. § 2000e–5, bars a court from awarding back pay where an employee suffers an adverse employment action "for any reason other than discrimination" on account of disability, the court denied Nawara's request and entered judgment accordingly. *Id.* (citing 42 U.S.C. § 2000e–5(g)(2)(A)). The court also declined to issue an order restoring his vacation days, holidays, sick days, and seniority.

Nawara subsequently moved to amend the judgment under Fed. R. Civ. P. 59(e), arguing that the district court had failed to fully evaluate his request for the restoration of his seniority. Upon closer examination, the district court agreed and granted Nawara's request to restore his seniority based on the Supreme Court's allowance of such relief in *Franks v. Bowman Transportation Co.*, 424 U.S. 747, 770 (1976). *See Nawara v. County of Cook*, No. 17 C 2393, 2022 WL 3161805, at *2 (N.D. Ill. Feb. 15, 2022), *corrected*, 2022 WL 3161838 (N.D. Ill. July 29, 2022).

At that point, the Sheriff moved to amend the judgment restoring Nawara's seniority. According to the Sheriff, the court had ignored a prior stipulation stating that seniority would be restored to Nawara "if the Court awards back pay." In the Sheriff's view, because the district court denied back pay, Nawara was not entitled to his seniority. The district

court, however, disagreed and denied the Sheriff's motion. *Nawara*, 2022 WL 3161838, at *3. Both sides have appealed the respective rulings.

## II

### A. § 12112(d) and Back Pay

In his appeal, Nawara contends that the district court erred by construing the relevant statutes in a way that renders him ineligible for back pay. Thus, this case presents a question of statutory interpretation that we review *de novo. United States v. Patel*, 778 F.3d 607, 613 (7th Cir. 2015). And, as in any case of statutory construction, "a court's proper starting point lies in a careful examination of the ordinary meaning and structure of the law itself." *Food Mktg. Inst. v. Argus Leader Media*, 588 U.S. 427, 436 (2019). If "that examination yields a clear answer, judges must stop." *Id.* For where "the statute's language is plain, 'the sole function of the courts is to enforce it according to its terms.'" *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989) (quoting *Caminetti v. United States*, 242 U.S. 470, 485 (1917)).

Our analysis starts with the statutory provision giving rise to Nawara's claim—42 U.S.C. § 12112. This section begins with a broad proscription: "No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job

training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).[2]

Later in subsection (d), the statute provides that "[t]he prohibition against discrimination as referred to in subsection (a) shall include medical examinations and inquiries." *Id.* § 12112(d)(1). And, as applied to current employees, this means:

> [An employer] shall not require a medical examination and shall not make inquiries of an employee as to *whether such an employee is an individual with a disability or as to the nature or severity of the disability*, unless such examination or inquiry is shown to be job-related and consistent with business necessity.

*Id.* § 12112(d)(4)(A) (emphasis added).

Based on this language, we have held that an employee may invoke § 12112(d)(4)(A) even if he is not disabled or perceived to be disabled. *See Kurtzhals v. County of Dunn*, 969 F.3d 725, 730 (7th Cir. 2020). And that is what we have here. Nawara has never claimed that he was disabled or that the

---

[2] The ADA defines "covered entity" as an employer, employment agency, labor organization, or joint labor-management committee, 42 U.S.C. § 12111(2), and a "qualified individual" as an "individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires," *id.* § 12111(8). Unless it matters, we will refer to the former as "employer" and the latter as "employee." In addition, the term "disability" means: (1) "a physical or mental impairment that substantially limits one or more major life activities," (2) "a record of such an impairment," or (3) "being regarded as having such an impairment." *Id.* § 12102(1)(A)–(C).

Nos. 22-1393, 22-1430, 22-2395, & 22-2451                7

Sheriff perceived him to be disabled. This is helpful to keep in mind as we review the remedies available under the ADA.

The ADA's enforcement provision, § 12117, incorporates the "powers, remedies, and procedures set forth in [42 U.S.C.] sections 2000e–4, 2000e–5, 2000e–6, 2000e–8, and 2000e–9." 42 U.S.C. § 12117(a). In so doing, it makes available to ADA plaintiffs the same remedies available to Title VII plaintiffs. *See Serwatka v. Rockwell Automation, Inc.*, 591 F.3d 957, 962 (7th Cir. 2010).

Subsection 2000e–5(g) addresses the availability of back pay. 42 U.S.C. § 2000e–5(g). It begins with the general rule that a "court may … order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, *with or without back pa*y[,] … or any other equitable relief as the court deems appropriate." *Id.* § 2000e–5(g)(1) (emphasis added); *see Vega v. Chi. Park Dist.*, 12 F.4th 696, 707 (7th Cir. 2021) ("Title VII affords wide latitude to fashion an award that fits the circumstances peculiar to the case[.]") (internal quotation marks and citation omitted).

The next subsection, however, contains a substantial limitation: "No order of the court shall require … the payment to [a plaintiff] of any back pay, if such individual was … suspended, … or discharged for *any reason other than discrimination* on account of race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e–5(g)(2) (emphasis added).

Recall that the jury found that the Sheriff had violated § 12112(d)(4)(A) by requiring Nawara to undergo a fitness-for-duty examination and disclose his medical records. But the jury did not find (because it was not asked to) that Nawara

had a disability or a perceived disability. Accordingly, as the Sheriff sees it, the unlawful conduct, as determined by the jury, was for a "reason other than discrimination on account of" disability, and § 2000e–5(g)(2) precludes Nawara from recovering back pay.

Pushing back, Nawara offers two arguments. First, he points out that § 2000e–5(g)(2) does not mention "disability" at all; thus, Nawara posits, the provision applies only to cases involving Title VII claims and not ADA claims. Alternatively, Nawara contends, the ADA counts a violation of § 12112(d)(4)(A) as a form of "discrimination on account of disability" and, thus, § 2000e–5(g)(2)'s bar does not apply. We believe that Nawara is wrong on the first point but right on the second.

Congress enacted the ADA "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). While the ADA addresses other "major spheres of public life" such as public services and public accommodations, *see Lacy v. Cook County*, 897 F.3d 847, 852 (7th Cir. 2018), "Title I of the ADA … is devoted to eliminating employment discrimination," *Karraker v. Rent-A-Center, Inc.*, 411 F.3d 831, 834 (7th Cir. 2005).

To that end, § 12112(a) prohibits "discrimination … on the basis of disability" as to the "terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). And § 12117(a) incorporates § 2000e–5 in its entirety, including all the "powers, remedies, and procedures" attendant to it. *Id.* § 12117(a). Thus, § 12117(a) requires us to replace in § 2000e–5(g)(2)(A) the phrase "discrimination on account of race … national origin" with "discrimination on account of disability" while

leaving the remainder of the subsection intact. This is the most natural reading of § 12117(a).

Nawara's preferred construction, on the other hand, would lead to nonsensical results. He argues that the district court erred "when it rewrote the statute and added the term 'disability' to 42 U.S.C. § 2000e-5(g)(2)(A)." But if we were to maintain the language of § 2000e–5(g)(2) as is (as Nawara proposes), § 12117(a)'s incorporation of § 2000e–5 would mean that *no* ADA claimant would be able to recover back pay even if he or she were able to prove discrimination due to disability. *But see Mosby-Meachem v. Memphis Light, Gas & Water Div.*, 883 F.3d 595, 608 (6th Cir. 2018) (affirming the award of back pay where a jury found discrimination due to disability); *Stragapede v. City of Evanston*, 865 F.3d 861, 868 (7th Cir. 2017), *as amended* (Aug. 8, 2017) (same); *E.E.O.C. v. E.I. Du Pont de Nemours & Co.*, 480 F.3d 724, 731 (5th Cir. 2007) (same). Moreover, Nawara's interpretation would place § 2000e–5(g)(2) at odds with subsection (g)(1), which expressly permits the court to award back pay in ADA cases. Therefore, we agree with the district court that, in the context of the ADA, § 2000e–5(g)(2) precludes back pay when an employer acts unlawfully for any reason other than "discrimination on account of disability."

But our analysis does not end there. This construction of § 2000e–5(g)(2) leads to the second question—does the Sheriff's violation of § 12112(d)(4)(a) count as discrimination on account of disability even absent evidence that Nawara had a disability or a perceived disability? Our examination of the statutory text leads us to answer yes.

We return to the general rule—§ 12112(a) prohibits "discrimination … on the basis of disability" as to the "terms,

conditions, and privileges of employment." 42 U.S.C. § 12112(a). In turn, § 12112(d)(1) explains that "[t]he prohibition against discrimination as referred to in subsection (a) shall include medical examinations and inquiries." 42 U.S.C. § 12112(d)(1). In the district court's view, these two provisions taken together merely add "medical examinations and inquiries" to the various ways, enumerated in § 12112(a), that an employer might discriminate against a disabled individual. Under this reading, being subject to medical examinations and inquiries is a means of discriminating, not discrimination in and of itself. This interpretation, however, suffers from several flaws.

First, reading § 12112(d)(1) merely to add medical examinations and inquiries as additional examples of unlawful discrimination under § 12112(a) would render § 12112(d)(1) surplusage because a medical examination and inquiry will *always* be a job application procedure or a term or condition of employment. *See* Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 176 (2012) ("If a provision is susceptible of (1) a meaning that gives it an effect already achieved by another provision … and (2) another meaning that leaves both provisions with some independent operation, the latter should be preferred.").

Furthermore, incorporating § 12112(d) wholesale into § 12112(a) is an odd fit, because the latter requires the ADA claimant to have a disability or perceived disability, *see* § 12102(1)(A)–(C), while the former permits an individual to file a claim even though he may not. *See Kurtzhals*, 969 F.3d at 730 (noting § 12112(d)(4)(A) "applies to all employees, with or without an actual or perceived disability"); *see also Griffin v. Steeltek, Inc.*, 160 F.3d 591, 594 (10th Cir. 1998) ("It makes little

sense to require an employee to demonstrate that he has a disability to prevent his employer from inquiring as to whether or not he has a disability.") (internal quotation marks and citation omitted). Nor is it satisfactory to say that subsection (d)(1) operates entirely separately from subsection (d)(2), (3), or (4), because (d)(1) sets forth the "general" rule as the title indicates. *See Yates v. United States*, 574 U.S. 528, 540 (2015) (stating that, although "headings are not commanding, they supply cues" as to Congress's intent).

The better construction of § 12112(d)(1) can be gleaned from its text. It refers to the "prohibition against discrimination referred to in subsection (a)." Employing the "nearest-reasonable-referent" canon of construction, Scalia & Garner, Reading Law, at 152, we take "referred to in subsection (a)" as modifying "discrimination." And the "discrimination" referenced in § 12112(a) is "discrimination *against a qualified individual on the basis of disability*." Thus, returning to the language in § 12112(d)(1), § 12112(a)'s prohibition on discriminating against a qualified individual on the basis of disability "shall include" § 12112(d)'s prohibition on requiring a medical examination or inquiry as described in § 12112(d)(4)(A). Put another way, to prove a violation of § 12112(d)(4) is to prove discrimination on the basis of disability under § 12112(a). *Accord Bates v. Dura Auto. Sys., Inc.*, 767 F.3d 566 (6th Cir. 2014) ("The ADA ban of 'discriminat[ion] ... on the basis of disability' thus encompasses medical examinations and disability inquiries involving employees.").

The Sheriff disagrees with such a construction, arguing that it goes against the commonly understood meaning of "discrimination." But the colloquial use of a word does not necessarily bind its meaning in a particular statute. *See Bostock*

*v. Clayton County*, 590 U.S. 644, 665–67 (2020) ("[C]onversational conventions do not control … legal analysis."). After all, Congress can define "discrimination … on the basis of disability" however it likes. And here, Congress effectuated the broad remedial purpose of the ADA by including medical examinations and inquiries into an employee's disability status within the definition of "discrimination … on the basis of disability."

Nor is this unique to § 12112(d). For example, § 12112(b)(6) prohibits "using qualification standards, employment tests or other selection criteria that screen out or tend to screen out an individual with a disability." Similarly, § 12112(b)(3) forbids "utilizing standards, criteria, or methods of administration … that have the effect of discrimination on the basis of disability; or … that perpetuate the discrimination of others who are subject to common administrative control[.]" Moreover, § 12112(b)(4) proscribes "excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association[.]" And § 12112(b) expressly includes all of this conduct—whether or not the target individuals are disabled—within the phrase "discriminate against a qualified individual on the basis of disability." 42 U.S.C. § 12112(b).[3]

In sum, read together, § 12112(a) and § 12112(d)(1) define

---

[3] This construction is also consistent with the Equal Employment Opportunity Commission's own definition of "discrimination" in its regulations governing the ADA. *See* 29 C.F.R. § 1630.4(a)(2) (defining the term "discrimination" to include requiring medical examinations and inquiries).

Nos. 22-1393, 22-1430, 22-2395, & 22-2451                13

a violation of § 12112(d)(4)(A) to constitute discrimination on the basis of disability under § 12112(a). Consequently, § 12117(d)—drawing as it does on Title VII's remedial structure—authorized Nawara to recover back pay for the Sheriff's ADA violation.[4]

## B. Restoration of Seniority

That leaves the Sheriff's cross-appeal. The Sheriff contends that we must vacate the award of restored seniority as moot because, starting in 2019, Nawara ceased to work as a correctional officer and became a police officer in a separate department within the Sheriff's Office.

"A case that becomes moot at any point during the proceedings is no longer a Case or Controversy for purposes of Article III, and is outside the jurisdiction of the federal courts." *United States v. Sanchez-Gomez*, 584 U.S. 381, 385–86 (2018) (internal quotation marks omitted). "The party asserting mootness bears the burden of persuasion." *Wis. Right to Life, Inc. v. Schober*, 366 F.3d 485, 491 (7th Cir. 2004).

To the Sheriff's point, after Nawara transferred to the Cook County Sheriff's police department, he joined a different union and his seniority clock was reset for police assignments. The Sheriff, however, has made no attempt to show that Nawara's increased seniority would be useless to him as a police officer in the Sheriff's Office. This failure of proof alone is fatal to the Sheriff's position.

---

[4] We take this opportunity to commend the United States for its amicus brief which provided a helpful discussion of the relevant statutory provisions.

14                                          Nos. 22-1393, 22-1430, 22-2395, & 22-2451

In any event, we note that the relevant collective bargaining agreements between the Sheriff's Office and the police officers' union (which are publicly available government documents) provide that, in the event of a tie in seniority in the police department, the employee's seniority in the Sheriff's Office will be used to break the tie.[5] Thus, it appears that the restoration of Nawara's seniority could benefit him even in his current employment. Accordingly, the Sheriff's invocation of mootness fails.

### III

For these reasons, we AFFIRM the judgment to the extent that it restores Nawara's seniority but REVERSE the judgment as to Nawara's ability to request back pay. This case is remanded for further proceedings consistent with this opinion.

---

[5] *See* Collective Bargaining Agreement § 4.2, effective December 1, 2017 through November 30, 2020, https://opendocs.cookcountyil.gov/human-resources/labor-agreements/2017-2020/2017-2020_FOP_County_ Police_Officers.pdf; Collective Bargaining Agreement § 8.1, effective December 1, 2020 through November 30, 2025, https://opendocs. cookcountyil.gov/human-resources/labor-agreements/2020-2025/2020-2025_FOP_OPR_CBA.pdf.